Filed 7/10/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DANIEL DEL BIAGGIO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PETE BANSEN et al.,<br><br>        Defendants and Respondents. | A174647<br><br><br>(Humboldt County<br>Super. Ct. No. CV1901078) |

Daniel Del Biaggio was the prevailing party in a lawsuit he filed against Pete and Mary Ann Bansen. After trial, the court awarded him attorney fees pursuant to the parties' contract, but reduced his attorney's compensable hours and excluded, sua sponte, all claimed paralegal fees on the ground that the contract did not authorize their recovery. Del Biaggio moved for reconsideration of the latter portion of the ruling, which the court denied, also ordering his lawyer to pay the Bansens' attorney fees in opposing the motion. On appeal, Del Biaggio challenges the lodestar reduction and the exclusion of paralegal fees, as well as the attorney fee sanctions the court imposed in connection with the motion for reconsideration. The Bansens, for their part, have asked us to award them appellate fees as sanctions on the grounds that the appeal is frivolous and that Del Biaggio's opening brief misrepresented the case law by including fictional quotations.

We affirm the trial court's reduction of the attorney's lodestar, but reverse its ruling that paralegal fees are not within the scope of the contract's

fee-shifting provision and vacate the sanctions imposed based on the motion for reconsideration. Finally, although we reject the Bansens' contention that the appeal is frivolous, we will order Del Biaggio's counsel, Carlton Floyd, to pay sanctions to the court for filing an opening brief with misstatements of the case law, including fictional quotations.

## BACKGROUND

The parties' contract was titled Agreement for Dairy Operations Succession Plan (Agreement). It provided that Del Biaggio would receive a monthly salary in exchange for working at the Bancrest Dairy, which is in Humboldt County and owned by the Bansens. It also provided that the Bansens would transfer livestock to him over time, pay him the costs of raising calves and milk production, and give him the opportunity to lease the dairy after four years.

After the four years passed, the Bansens allegedly failed to give Del Biaggio the full payment he was due, owing him 30 milk cows, 5 yearlings, and all offspring of these animals or their value. Del Biaggio sued, and causes of action for breach of contract, unjust enrichment, and conversion were ultimately submitted to the jury. The jury awarded him $52,850 in damages, although it did not specify for which causes of action. Del Biaggio then moved for fees under a provision of the Agreement authorizing the prevailing party to recover "a reasonable sum as and for its attorneys' fees in the litigation."

Del Biaggio sought $115,533 in attorney fees, consisting of 283.1 hours of attorney time, most of them at $400 per hour (increased from $300 per hour in June 2022) and 86.1 hours of paralegal time at $130 per hour. The Bansens opposed the motion, urging the court to deny fees altogether by finding that there was no prevailing party, and in the alternative, to reduce

2

the award because the hours and the attorney's hourly rate were grossly excessive.

The trial court concluded that Del Biaggio was entitled to fees as the prevailing party. It found that the attorney's hourly rate was reasonable, but that for a variety of reasons the number of hours was not. It reduced the attorney's compensable hours to 140, resulting in a sum of $56,000. The court also held sua sponte that the Agreement's provision authorizing the prevailing party to recover "attorneys' fees" did not include paralegal fees, and it therefore excluded all of those hours.

Del Biaggio then moved for reconsideration of the court's order insofar as it denied recovery of paralegal fees, contending that numerous cases have held that paralegal fees are recoverable as attorney fees. The Bansens opposed the motion, arguing that it was procedurally improper and that the cited cases did not support Del Biaggio's position in any event. Their opposition also requested sanctions against Del Biaggio's attorney under Code of Civil Procedure section 128.5,[1] asking the court to award them the fees they incurred in opposing the motion.

The trial court denied the motion for reconsideration on the grounds that no new law or facts were presented, and that on the merits, the plain language of the contract authorized recovery only of attorney fees. The court also ordered Del Biaggio's attorney to pay the Bansens' counsel the sum of $2,250 in fees pursuant to section 1008, representing five hours of attorney time at $450 per hour to oppose the motion and appear at the hearing, although it stated at the hearing that it was not "impos[ing] sanctions as such."

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

3

After Del Biaggio filed his opening brief on appeal, the Bansens moved in this court for sanctions against him and his attorney on the grounds that the appeal is frivolous and that the opening brief contains misrepresentations of the case law it cites. Del Biaggio filed an opposition to the motion notwithstanding California Rules of Court, rule 8.276(d), which provides that "an opposition may not be filed" unless the court sends a notice that it is considering imposing sanctions. (See *id.*, rule 8.276(c).) We later issued such a notice in the form of an order to show cause why Floyd, Del Biaggio's attorney, should not be sanctioned under rule 8.276(a)(4) for the misstatements of the case law in the opening brief, including fictitious quotations. Floyd timely responded by re-submitting the previously filed opposition. Several weeks later, shortly before oral argument, Floyd filed a letter identifying and withdrawing the misstatements. He also sought to file a supplemental response and declaration to the order to show cause. We did not accept the latter documents for filing because they were untimely and Floyd offered no explanation for the delay.

## DISCUSSION

### I.

We generally review a trial court's award of attorney fees for abuse of discretion. (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 246.) To the extent the award turns on a legal issue, such as contract interpretation (where no extrinsic evidence was submitted), we review that issue independently. (*Evleshin v. Meyer* (2025) 115 Cal.App.5th 1021, 1029; *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124, 1165.)

4

## A.

We start with whether the trial court abused its discretion by reducing the compensable attorney hours from 283.1 to 140, resulting in an award of $56,000 in attorney fees. Civil Code section 1717 provides that, where a contract provides for the recovery of attorney fees, "[r]easonable attorney's fees shall be fixed by the court." The determination of reasonableness is committed to the sound discretion of the trial judge, who is in the best position to evaluate "the value of professional services rendered" in their court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).)

Here, the court determined that the requested $400 hourly rate was reasonable based on its experience with hourly rates charged by attorneys in Humboldt County. The court concluded, however, that the number of hours expended by Del Biaggio's attorney was not. First, characterizing the dispute as "a fairly straightforward breach of contract case," it found that Del Biaggio's counsel had "added complexity by including multiple causes of action that were either unwarranted under the law or unsupported by evidence." Second, because many of the time sheet entries were block billed, the court was unable to identify how much time was spent on these unreasonable endeavors, which included causes of action for Labor Code violations, negligence, infliction of emotional distress, and punitive damages. Third, the court found that the entries appeared to show some duplication of effort.

Del Biaggio fails to persuade us that there was any abuse of discretion. He blames the Bansens and their counsel for the length and complexity of the litigation, but his conclusory assertions do not furnish us with a basis to second-guess what the trial court observed firsthand. He also argues that the trial court could not permissibly reduce block-billed hours without making

5

"specific findings" that the entries were unreasonable or "without quantifying unreasonable time." Del Biaggio's cited authorities do not support that argument, which overlooks that his attorney's use of block billing was precisely what made it impossible for the court to draw finer distinctions. (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830 ["block billing is not objectionable 'per se,' though it certainly does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request"].) It is true, as Del Biaggio points out, that the trial court was not *required* to apportion fees between successful and unsuccessful claims that involved common issues, but it was not prohibited from doing so either. (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 628.) Lastly, Del Biaggio claims that "the $400 hourly rate, while perhaps reasonable for Humboldt County, undervalues the specialized skill required for this dairy-related business dispute." We find no abuse of discretion in the trial court's decision to use the hourly rate that Del Biaggio's own attorney proposed as reasonable.

**B.**

Before addressing the trial court's conclusion that the Agreement's fee-shifting provision did not authorize recovery of paralegal fees, we note that Del Biaggio's argument on this point in his opening brief (unlike in his trial court papers) rested in part on fictional quotations from the case law. We address that problem in Part III, and for present purposes disregard the misrepresentations of cited authority.

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." (§ 1021.) The Agreement contains the following fee-shifting provision: "If any litigation is

6

commenced between the parties to this Agreement, or the rights and duties of either party with respect to this Agreement, the party prevailing in the litigation shall be entitled, in addition to any other relief that may be granted in the litigation, to a reasonable sum as and for its attorneys' fees in the litigation that shall be determined by the court in the litigation or in a separate action brought for that purpose." The term "attorneys' fees" is not defined.

"The basic rule of contract interpretation is to effectuate the parties' intent as expressed in the contract's terms, which are given their common meaning. . . . Contractual language must be construed in the context of the contract as a whole, and in the circumstances of the case." (*Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.* (2003) 106 Cal.App.4th 293, 298.) "Purpose can be illuminating when interpreting any written directive, because understanding what the parties were trying to accomplish by means of their words can help make sense of those words." (*Regency Midland Construction, Inc. v. Legendary Structures Inc.* (2019) 41 Cal.App.5th 994, 998–999.) We try to avoid an interpretation " 'which will make the contract unusual, extraordinary, harsh, unjust or inequitable [citations], or which would result in an absurdity.' " (*West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1185.)

In the abstract, the term "attorneys' fees" could be understood to refer to fees charged for work performed only by attorneys, in which case fees charged for work by paralegals would fall outside its scope. But we do not find that interpretation likely in the context of the parties' contractual fee-shifting provision. It appears to us that one of the purposes of that provision is to allow the prevailing party to recover, to the extent the amount is reasonable, what it paid or owed its counsel to prosecute or defend the

7

litigation, in order to restore it to the position it would have been in had it not been required to litigate. "[T]he usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (*Trope v. Katz* (1995) 11 Cal.4th 274, 280.)

Del Biaggio's lawyer separately billed his paralegal's time, declaring that he believed the rate of $130 per hour to be "reasonable for this community." The Bansens did not dispute the rate, nor did they contend that this practice, which courts have found to be common elsewhere, is not the norm in Humboldt County. (See *Missouri v. Jenkins by Agyei* (1989) 491 U.S. 274, 289 (*Jenkins*) [noting that separate billing for paralegal services "appears to be the practice in most communities today"]; *Guinn v. Dotson* (1994) 23 Cal.App.4th 262, 269 (*Guinn*) ["It appears that the prevailing practice in the Inland Counties is to bill separately for paralegal service time at a reasonable market value rate"]; *Hong v. Liu (In re Liu)* (C.D.Cal. Sept. 14, 2020, No. 8:19-CV-00131-JLS) 2020 U.S.Dist. Lexis 169725, at *30; *Hawkins v. Berkeley Unified Sch. Dist.* (N.D.Cal. Nov. 20, 2008, No. C-07-4206 EMC) 2008 U.S.Dist. Lexis 94673, at *37; *Frank v. Wilbur-Ellis Co. Salaried Emples. Ltd. Plan* (E.D.Cal. Aug. 18, 2009, No. CV-F-08-284- LJO-GSA) 2009 U.S.Dist. Lexis 80352, at *22; see also *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 274 ["In recent years, awards of attorneys' fees for paralegal time have become commonplace, largely without protest"].)[2]

---

[2] In a section of their brief addressing the sanctions based on the motion for reconsideration, the Bansens write that there is no paralegal listed on the letterhead for Del Biaggio's counsel, that the record does not show that Del Biaggio's attorney claimed to have more than "a single administrative 'paralegal,' " and that the attorney's hourly rate "adopted by the court already had taken into account overhead, salaries, support personnel, as addressed in *PLCM*[, *supra*, 22 Cal.4th at page] 1097." The

"By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services . . . .' " (*Jenkins*, at p. 288.) If the term "attorneys' fees" in the Agreement excluded paralegal fees, it would incentivize the parties to have attorneys perform work that could otherwise be assigned to a paralegal, needlessly increasing costs for everyone. It would thereby also operate at cross-purposes with the provision in the same sentence that the prevailing party is entitled only to a "reasonable sum."

Published cases expressly considering whether paralegal fees are recoverable as a component of attorney fees generally address fee-shifting provisions in statutes rather than contracts, but the courts have uniformly answered the question affirmatively. (See *Roe v. Halbig* (2018) 29 Cal.App.5th 286, 312 [interpreting section 1987.2, subd. (c)]; *Guinn, supra*, 23 Cal.App.4th at pp. 268–269 [§ 411.35, subd. (h)]; *Sundance v. Municipal Court, supra*, 192 Cal.App.3d at p. 274 [§ 1021.5]; *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 951 [§ 1036]; see also *Jenkins, supra*, 491 U.S. at p. 285 [42 U.S.C. § 1988].) In *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, which involved a contractual attorney fee provision allowing the prevailing party to recover "reasonable attorneys' fees," the court held that the lawyer-plaintiff could not

---

Bansens did not raise these arguments in the trial court. In any event, putting aside the Bansens' unexplained and unsupported use of the word "administrative," we do not see that the first two points have any bearing on the question. Moreover, as the Bansens elsewhere point out, *PLCM* did not address paralegal fees at all, so it does not stand for the proposition that the costs of employing a paralegal are incorporated in the attorney's billing rate, and nothing in the record indicates that the trial court made a factual finding on that issue.

recover his *own* fees as a prevailing party, but concluded that he could recover fees "for other attorneys and paralegals" he had hired to represent him. (*Id.* at pp. 52, 96; see *id.* at p. 92 [acknowledging case law holding that paralegal fees may be recovered as attorney fees]; cf. *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1104 [disallowing recovery of paralegal fees on the ground that attorney fees were not recoverable].) And courts have approved contractual attorney fee awards that included paralegal fees without anyone suggesting that the contract's fee-shifting provision did not reach them. (See, e.g., *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 519; *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702.)

To be sure, nothing prevented the parties here from taking a narrower approach. But the Bansens do not explain why it would have made sense for them to do so, nor do they show that they actually did so by employing, without definition or limitation, the same term that has consistently been interpreted to authorize the recovery of paralegal fees. We also find it telling that, in opposing the fee motion in the trial court, the Bansens acknowledged that Del Biaggio's request included fees "at a paralegal rate of $130 per hour" but never argued that those fees were outside the scope of the Agreement's attorney fee provision. All parties implicitly agreed in their original briefing that the language was broad enough to cover them. The contrary interpretation was offered sua sponte by the trial court, and appeared for the first time in its order on the motion.

For these reasons, we conclude the trial court erred insofar as it concluded that the Agreement did not authorize the recovery of paralegal fees. At the same time, we decline Del Biaggio's request that we direct the court to award him the full amount requested for paralegal time. On

10

remand, the court should evaluate whether and to what extent the paralegal's hours and rate were reasonable and adjust the lodestar accordingly.

## II.

We turn now to the trial court's order that Del Biaggio pay the attorney fees the Bansens incurred to oppose his motion for reconsideration. The court issued the order under subdivision (d) of section 1008, which provides that "[a] violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7." Section 128.7 authorizes sanctions against parties and their attorneys who file papers in court frivolously, in bad faith, or otherwise improperly. (See § 128.7, subds. (b), (c).) We review sanctions orders, including those issued pursuant to the court's authority under section 1008, for abuse of discretion. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1168.) But as in other contexts, we review subsidiary legal issues de novo, and will find an abuse of discretion if the decision rests on an error of law. (See *David v. Hernandez* (2014) 226 Cal.App.4th 578, 590; see also *Moofly Productions, LLC v. Favila* (2018) 24 Cal.App.5th 993, 997 (*Moofly*) [reviewing de novo question of statutory interpretation presented by sanctions award under section 1008].)

The Bansens' request for sanctions in their opposition to the motion for reconsideration relied on section 128.5, which applies to "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." At the hearing, the court stated that it was "not going to impose sanctions as such, but under [section] 1008, the Court will award the defendants five hours of attorney time for opposing and appearing today." [3]

---

[3] We do not know whether the court meant that it was denying the Bansens' request for sanctions under section 128.5, or whether it perhaps

11

*Moofly* held that a trial court may not award sanctions under subdivision (d) of section 1008 "unless all the requirements of section 128.7 . . . are followed." (*Moofly, supra*, 24 Cal.App.5th at p. 997.) Albeit without citing authority, Del Biaggio asserts that the court's order failed to include required findings justifying the award of fees. (See § 128.7, subd. (e) ["When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed"]; cf. *Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 879–880 [reversing based on trial court's failure to specify the reasons for its fee award as required under section 128.5].) Because Del Biaggio raised this point only in his reply brief and failed to support it with authority, we will not reverse on that ground.[4]

---

intended to convey that it did not believe the conduct by Del Biaggio's attorney rose to a level it would consider sanctionable if it had not occurred in connection with a motion for reconsideration. (But see *Moofly, supra*, 24 Cal.App.5th at p. 998 ["In every case that we are aware of, the court has upheld sanctions under section 1008, subdivision (d) only for conduct that violates the standards of section 128.7"].) Del Biaggio's opening brief contends that "section 1008 does not authorize sanctions for first-time reconsideration motions unless frivolous under other standards," but we do not reach this undeveloped argument in light of our conclusion that the motion was both substantively meritorious and procedurally compliant with section 1008.

[4] Del Biaggio does not raise other procedural issues, but we note that section 128.5, when directed toward a written motion, requires a motion "made separately from other motions or requests" and prohibits its filing until the other party has been given 21 days to withdraw or correct the challenged paper. (§ 128.5, subd. (f)(1)(A), (B).) The Bansens' request for sanctions did not comply with these requirements, which would generally require the court to deny it. (See, e.g., *Zarate v. McDaniel* (2023) 97 Cal.App.5th 484, 491; *CPF Vaseo Associates, LLC v. Gray* (2018) 29 Cal.App.5th 997, 1007–1008.) Moreover, when the court acts on its own motion—as it arguably did by invoking subdivision (d) of section 1008 rather than the provision on which the Bansens had relied—it must issue an order to show cause "describing the specific conduct" warranting sanctions and

12

Nonetheless, the court's failure to provide an explanation for its decision hampers our review. Characterizing the motion for reconsideration as "frivolous," the Bansens contend that the court did not abuse its discretion because there was no error in the court's exclusion of paralegal fees and no new law warranting reconsideration. Our discussion in Part I.B above suffices to address the contention that the court did not err by interpreting the Agreement to exclude recovery of paralegal fees or that Del Biaggio's argument on the point was frivolous.

To the extent the court's sanctions award rested on a conclusion that the motion for reconsideration was procedurally improper, we disagree. A motion for reconsideration may be made "based upon new or different facts, circumstances, or law." (§ 1008, subd. (a).) In his motion, Del Biaggio contended that there were both "new or different circumstances and law justifying reconsideration." The critical factor when evaluating those grounds here is that the interpretation of the Agreement Del Biaggio asked the trial court to reconsider was offered by the court itself in its order.

We do not suggest that it was improper for the trial court to raise an issue of contract interpretation that the parties themselves did not. The problem is that the court never shared its view nor invited them to respond. "[F]undamental principles of due process . . . call for those with an interest in the matter to have notice and the opportunity to be heard, so that the ensuing order does not issue like a 'bolt from the blue out of the trial judge's chambers.'" (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th

---

affording the party 21 days to withdraw or correct the challenged filing. (§ 128.7, subd. (c)(2); *Moofly, supra*, 24 Cal.App.5th at p. 999 [reversing sanctions because the trial court failed to comply with the 21-day safe harbor].) We do not decide whether the court's failure to do so here warrants reversal because Del Biaggio has not sought relief on that basis.

1282, 1286 (*Monarch*).) Here, the court did not provide the parties with any notice, such as by issuing a tentative decision or even by posing the question at the hearing itself, and it therefore also failed to give them an opportunity to address it. (Cf. *Quilala v. Securitas Security Services USA, Inc.* (2025) 117 Cal.App.5th 75, 85 [court's tentative ruling and invitation at the hearing to address the issue it raised sua sponte satisfied due process].) "Taking an example from the appellate procedure of Government Code section 68081, a good practice would be for law-and-motion judges to give parties advance notice of any 'issue which was not proposed or briefed by any party to the proceeding,' thereby allowing them to speak directly at oral argument to the court's concerns and, if desired, to file a supplemental memorandum of points and authorities before or after the hearing." (*Monarch*, at p. 1286.)

Under these circumstances, we agree with Del Biaggio that the motion for reconsideration was permissible to address an issue "which Respondents had not raised in opposing the initial fees motion." In *Monarch*, the court found that the petitioner's complaint about the lack of notice was forfeited because it failed to seek relief in the trial court, pointing out that one option available to it was to "file a motion to reconsider in order to address the 'different circumstance' of the court's sua sponte injection" of an issue no party had raised. (*Monarch, supra*, 78 Cal.App.4th at pp. 1286–1287, citing section 1008.) That is what Del Biaggio did here.

In this context, the motion also rested on new or different law. (§ 1008, subd. (a).) It is true that law may be considered "new or different" within the meaning of this section only if the moving party supplies a "satisfactory explanation for the failure to present [it] earlier." (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1200.) But Del Biaggio's attorney noted in his declaration that the parties' briefing on the original motion had

14

focused "on the lodestar calculation and overall reasonableness of the fee request," whereas the court's order had denied paralegal fees on the ground "that they are not recoverable under a contract mentioning only 'attorneys' fees.'" The fact that the trial court based its decision on an interpretation of the contract no party had offered, and that was contrary to the understanding the parties at least implicitly shared in their motion papers, satisfactorily explained Del Biaggio's failure to brief the issue earlier.[5]

Because Del Biaggio's motion for reconsideration was authorized under section 1008, subdivision (a) and was not frivolous—on the contrary, we have found it meritorious—we see nothing in the record that could warrant the imposition of sanctions. We therefore conclude that the trial court abused its discretion by awarding fees to the Bansens.

### III.

We come finally to the Bansens' motion for sanctions, in which they seek their attorney fees and costs on appeal. (Cal. Rules of Court, rule 8.276.) They assert that Del Biaggio's appeal "is without a reasonable legal or factual basis and not warranted under longstanding settled law," adding that Del Biaggio's opening brief "falsely represent[ed] case holdings." They do not elaborate on these points in the motion but purport to "incorporate" their "entire" respondents' brief "as well as the entire Court record in this action." In the respondents' brief, they pointed out that Del Biaggio's opening brief included a fictional quotation from *PLCM, supra*, 22 Cal.4th 1084 and

---

[5] The trial court's contrary conclusion may owe something to Del Biaggio's muddling of the point by also arguing that his motion relied on new or different law because the trial court had not cited any legal authority when denying recovery of paralegal fees based on the language of the Agreement. That argument lacked merit. If the issue had been raised, Del Biaggio could not have moved for reconsideration simply because the court adjudicated it without citing legal authority.

15

misrepresented the case's holding. They also characterized the appeal—specifically insofar as it concerns the motion for reconsideration of the trial court's exclusion of paralegal fees—as "fall[ing] squarely within the definition of frivolous."

Del Biaggio's opening brief does contain fictitious quotations, and not on tangential points. It purports to quote the following language from *PLCM, supra*, 22 Cal.4th 1084: " 'We discern no reason why fees for paralegal services should not be recoverable under section 1717. Allowing such recovery furthers the purpose behind section 1717 by ensuring mutuality of remedy and making it more likely that individual parties will be able to retain competent legal representation.' " And: " 'Services performed by paralegals . . . are properly considered as a component of attorney fees awards.' " No such language appears in that case—or any other of which we are aware—nor did the case address the subject of paralegal fees. The brief also purports to quote the case as follows: " 'We discern no basis for treating contractual attorney fee clauses differently' from statutory ones." This quotation is also fictitious; the closest language we see in the opinion makes a different point: "We discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer." (*PLCM, supra*, 22 Cal.4th at p. 1094.)

Contending that "[a]ppellate courts consistently follow *PLCM*," the opening brief then purports to quote *Gorman v. Tassajara Development Corp., supra*, 178 Cal.App.4th 44 as follows: " 'There is no doubt that fees for work performed by paralegals . . . are recoverable as part of a prevailing party's attorney fee award.' " This quotation is also fictitious, although the Bansens did not identify it as such in their motion or respondents' brief.

16

Del Biaggio's brief also makes several references to "*Guinn v. Dotco, Inc.*," purportedly at "27 Cal.App.4th 262," and while it bears more than a passing resemblance to *Guinn v. Dotson* (1994) 23 Cal.App.4th 262, Del Biaggio's opening brief incorrectly describes the case as involving a contractual attorney fee provision, when in reality it concerned a statute authorizing recovery of fees.[6]

In a declaration in support of his opposition to the motion, Floyd states that his office "uses generative AI" in a manner "consistent with State Bar guidance," with "protocols requiring human verification of all outputs using primary sources." He attributes the failures here to a "communication error," explaining that he added the quotations at issue during trial recesses in another case, and asked his paralegal to verify them but she understood he had already done so. He writes that he "deeply regret[s] any errors and affirm[s] they were not willful or AI-driven without review." The paralegal writes in her declaration that she verified all sources in a previous draft, but "based on a brief exchange" believed that Floyd had already verified his later additions to the draft.

First, even if the communication error had not occurred, Floyd's protocol would not comply with the State Bar guidance to which he refers. It provides that "a *lawyer* must review all outputs produced using AI tools for accuracy, including but not limited to analysis and citations to authority before submission to the court." (State Bar of California, Standing Committee on Professional Responsibility and Conduct, "Practical Guidance for the Use of Generative Artificial Intelligence in the Practice of Law"

---

[6] The brief contains other citation errors that we do not catalog here. We cannot say whether all of these errors are attributable to the use of AI, but we caution Floyd that he should adopt a different approach to his preparation of briefs.

(Practical Guidance), p. 9, italics added.)[7]  We glean from Floyd's declaration that he used generative AI to make additions to the opening brief during trial recesses in another case without ever planning to review personally—or even to have any other lawyer review—the case law he added.  Rather, he intended to have his paralegal simply check the citations before filing the brief.  This plan would have been inappropriate even if it had not gone awry.  (See *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 445 (*Noland*) ["it is a fundamental duty of attorneys to *read* the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited"].)

Second, while we accept Floyd's representation that there was no intent to mislead, we find the declarations vague about how precisely the "communication error" arose.  Floyd emphasizes that, because he was in trial, he had "limited time for review."  But his general unavailability to supervise the brief's finalization made it even less appropriate for him to expect his paralegal to assume responsibility for verifying what he wrote about cases he apparently had not laid eyes on himself.  Moreover, it should have been a red flag to him that the AI-supplied quotations, which articulated the exact proposition he sought to advance (including purportedly from the California Supreme Court 26 years ago), had eluded him when he researched the same issue in the trial court.  We reiterate here that "our warning to litigants is not merely an admonition to double-check citations and otherwise fastidiously

---

[7] We quote from the 2026 version.  Floyd's declaration cited the November 2023 version of the document, but the 2023 version we were able to find had the same requirement.  (State Bar of California, Committee on Professional Responsibility and Conduct, Recommendations on Regulation of Use of Generative AI by Licensees, Attachment A, "Practical Guidance for the Use of Generative Artificial Intelligence in the Practice of Law" (November 2023), pp. 3, 5.)

comply with the Rules [of Court]; it is to be at all times truthful and to be responsible in crafting any written arguments presented in this court." (*Sheerer v. Panas* (2026) 119 Cal.App.5th 367, 371.)

Third, the State Bar guidance to which Floyd refers also explains that the lawyer's duty of candor requires counsel to "correct any errors or misleading statements made to the court, regardless of whether such outputs were generated with or without real-time human direction." (Practical Guidance, at p. 9; see Rules Prof. Conduct, rule 3.3(a)(1) [a lawyer shall not "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"].) Ultimately Floyd did file a letter identifying and withdrawing the misstatements, but it came only a few days before oral argument and more than three months after he realized, based on the Bansens' motion for sanctions, that the opening brief had been filed without proper verification of the quotations and citations. In his opposition to the sanctions motion, Floyd wrote only that he deeply regretted "any errors." We reject Floyd's contention that these long-uncorrected errors caused no prejudice. Misrepresentations of the case law, however they come about, waste the time of both opposing counsel and the court, imposing on them the burden of correcting them.

We may order a lawyer to pay sanctions to the clerk of the court "for conduct that unnecessarily burdens the court and the taxpayers." (*Noland, supra*, 114 Cal.App.5th at p. 447.) We acknowledge that Floyd admitted the unverified use of AI, offered some explanation for how it occurred, and eventually sent a letter identifying and withdrawing the misstatements. But the protocol he described was insufficient not only to prevent the errors but also to satisfy his obligation to review personally the principal legal authority on which his argument relied. Waiting until shortly before oral argument to

19

correct the misstatements was also far from ideal. We find it appropriate under the circumstances to order Floyd to pay a sanction of $1,500 to the court. (Cf. *People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1120 [imposing sanctions of $1,500 for including a fictitious quotation, citing a nonexistent case, and citing two cases that do not address the issues for which they were cited, where attorney acknowledged using AI without verifying citations and sources]; *Schlichter v. Kennedy* (2025) 116 Cal.App.5th 24, 34 [imposing sanctions of $1,750 for fabricated legal authority, finding denials of AI use not credible]; *Malkeet LNU v. Blanche* (9th Cir. 2026) 117 F.4th 1014, 2026 U.S.App. Lexis 16174, at *3–*4, *29–*32 [imposing sanctions of $2,500 each on two attorneys for filing briefs with "multiple nonexistent cases, misattributed quotations, and gross misrepresentations of real cases" and then denying the possibility that AI might have produced the errors].)

While we order Floyd to pay sanctions to the court, we decline to award sanctions to the Bansens. It is true that they first raised the issue by identifying some of the misstatements of authority in the opening brief. But their motion significantly overreaches by characterizing the appeal as frivolous. We borrow a caution previously expressed by the Ninth Circuit: "Allegations of frivolous appeal are not taken lightly by this court." (*Tomer v. Gates* (9th Cir. 1987) 811 F.2d 1240, 1243.) The label is inappropriate here. As discussed above, Del Biaggio's motion for reconsideration in the trial court was procedurally authorized because the court decided sua sponte that paralegal fees could not be recovered under the Agreement, without giving the parties an opportunity to be heard. His argument in the trial court, which did not include the fictitious quotations that appear in his opening brief on appeal, came after the Bansens themselves had failed to dispute that paralegal fees were within the scope of the Agreement's fee-shifting

20

provision. His argument on appeal is not limited to the false quotations, and we have found it otherwise meritorious. Under these circumstances, we will not order Del Biaggio or Floyd to pay sanctions to the Bansens.

## DISPOSITION

The trial court's order awarding attorney fees is reversed insofar as it categorically denied recovery of paralegal fees, but is otherwise affirmed. On remand, the court shall evaluate the extent to which the paralegal fees sought are reasonable. The trial court's sanctions award against Del Biaggio's counsel under subdivision (d) of section 1008 is vacated. Attorney Carlton Floyd is directed to pay $1,500 in sanctions, payable to the clerk of this court, no later than 30 days after the remittitur is filed.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(3), the clerk of the court is ordered to forward a copy of this opinion to the State Bar upon issuance of the remittitur. Floyd is ordered, within 15 days of the issuance of the remittitur, to provide a copy of this opinion to his client and to file a certification in this court that he has done so.

The parties shall bear their own costs on appeal. We decline to rule on Del Biaggio's request for appellate fees under Civil Code section 1717 and leave that issue for resolution in the trial court. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 930.)

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Humboldt County Superior Court |
| Trial Judge: | Honorable Timothy Canning |
| Counsel for Plaintiff and Appellant: | Floyd Law Firm and Carlton D. Floyd |
| Counsel for Defendants and Respondents: | Law Office of W.G. Watson, Jr., Philip G. Watson and Stephen G. Watson |